IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Warren Drilling Co., Inc.,

        Plaintiff,

v.

Equitable Production Company,

        Defendant.

Case No. 2:12-cv-425

Judge Graham

Magistrate Judge Kemp

Opinion and Order

Plaintiff Warren Drilling Company, Inc. brings this suit for indemnification against defendant Equitable Production Company (now known as "EQT"). On April 16, 2014, the court granted summary judgment to Warren, finding as a matter of law that the parties' Drilling Contract placed on EQT a duty to defend and indemnify Warren with respect to a tort suit brought by property owners (the Hagys) against Warren for allegedly contaminating their water. The court directed the parties to submit further briefing and evidence concerning the reasonableness of the amount of: (1) Warren's settlement with the Hagys, (2) its attorneys' fees and costs in the Hagy litigation and (3) its attorneys' fees and costs in this litigation.

The issues of the reasonableness of the settlement amount and of the attorneys' fees and costs are now ripe before the court. Also before the court is EQT's motion for reconsideration of the April 16, 2014 Opinion and Order, which will be addressed first.

I.     Motion for Reconsideration

The court has authority under the Federal Rules of Civil Procedure and common law to reconsider interlocutory orders. See Fed. R. Civ. P. 54(b); In re Life Investors Ins. Co. of Am., 589 F.3d 319, 326 n.6 (6th Cir. 2009). A party moving for reconsideration of an interlocutory order must demonstrate: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 Fed.App'x 949, 959 (6th Cir. 2004); see also Tenn. Protection & Advocacy, Inc. v. Wells, 371 F.3d 342, 348 (6th Cir. 2004).

A. **EQT's Duty to Defend and Indemnify**

EQT argues that the court committed clear error by overlooking certain arguments made by EQT in the briefing on the cross-motions for summary judgment. EQT argues that the court improperly focused on §§ 11.5 and 11.6 of the Drilling Contract and did not address EQT's arguments that §§ 11.1.f and 11.3 required Warren to indemnify EQT. The court's opinion, however, made clear that §§ 11.1.f and 11.3 were general insurance and indemnity provisions that applied "except to the extent [the Drilling Contract] specifically provides otherwise." Apr. 16, 2014 Order at p. 1 (quoting § 11.3). And, as the order explained, the Drilling Contract did provide otherwise. Both parties alleged (and the available facts confirmed) that the nature of the Hagys' claim was one of water contamination. The court thus conducted an analysis of the two provisions of the Drilling Contract that specifically concerned a duty of indemnification for losses or claims relating to "pollution and contamination." Apr. 16, 2014 Order at p. 7.

EQT argues that § 11.1.f overrides the more specific provisions of the Drilling Contract because it provided that Warren "shall be solely responsible for any deductible or self-insured retention provisions of its insurance, any loss or damage in excess of the policy limits, and/or *any loss or damage that is not covered by the insurance* required under this Insurance Section." Drilling Contract, § 11.1.f (emphasis added). In EQT's view, this provision automatically made Warren responsible for any loss not covered by insurance. It is undisputed that Warren's insurer denied coverage of the Hagy claim.

The court finds that EQT's position is not tenable. Under Pennsylvania law,[1] "the specific controls the general" in contract interpretation. Baltic Development Co. v. Jiffy Enterprises, Inc., 257 A.2d 541, 543 (Pa. 1969); Trombetta v. Raymond James Fin. Servs., Inc., 907 A.2d 550, 560 (Pa. Super. Ct. 2006). Though the Drilling Contract required Warren to obtain primary insurance and provided that Warren generally would bear uncovered losses, §§ 11.5 and 11.6 created specific duties of indemnification when a "claim" was asserted by a third party for pollution or contamination, which is exactly what the Hagys asserted. Further, § 11.6 stated that EQT's duty to indemnify existed only when the claim was *not* covered by Warren's insurance. See Drilling Contract § 11.6 (making EQT liable to indemnify "except to the extent" such claim was "covered by [Warren's] insurance"). That is, § 11.6 expressly placed the duty of indemnification on EQT for certain

---

[1] The Drilling Contract contained a choice-of-law provision selecting Pennsylvania law, which the parties agree governs here. See Drilling Contract, § 24.

2

contamination claims in which the loss or claim was not covered by Warren's insurance. Thus, to interpret § 11.1.f as always making Warren responsible for any uncovered loss directly contradicts the specific language of § 11.6 and would render it meaningless. See Shehadi v. Northeastern Nat'l Bank of Pa., 378 A.2d 304, 306 (Pa. 1977) ("It is fundamental that one part of a contract cannot be so interpreted as to annul another part . . . .").

### B. EQT's Duty to Pay the Attorneys' Fees Incurred in this Litigation

The other facet of EQT's motion for reconsideration relates to the court's determination that EQT was obligated to pay the reasonable attorney's fees and costs that Warren incurred in bringing the instant litigation. EQT argues that the court's holding is contrary to Pennsylvania law, which "has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties, or some other established exception." Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co., 64 A.3d 1058, 1066 (Pa. 2013); see also Putt v. Yates-American Mach. Co., 722 A.2d 217, 226 (Pa. Super. Ct. 1998) ("Although parties to a lawsuit are generally responsible for their own attorney's fees, where one party expressly contracts to pay the other's fees, such an obligation will be enforced."). EQT argues that the "hold harmless" language in § 11.6 (that the court relied on in finding that Warren was entitled to its fees and costs in this litigation) is insufficient under Pennsylvania law to constitute an express contractual agreement to shift fees.

EQT did not make this argument in briefing the cross-motions for summary judgment.[2] Nonetheless, the court has discretion to reconsider an earlier ruling or consider a new argument raised prior to final judgment if failure to do so would result in a clear error. See Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009).

In its earlier decision, the court found that EQT's duty to pay Warren's litigation expenses in this action arose out of the hold harmless language in the Drilling Contract. Section 11.6 stated that EQT would hold Warren "harmless from and against any loss, damage [or] expense . . . for pollution or contamination . . . arising out of or connected with services performed [by Warren] . . . ." The court noted that hold harmless language has been interpreted to mean that the indemnitee "'is entitled to its costs and attorney's fees incurred to enforce the contractual indemnity provision.'"

---

[2] In its prior briefing, EQT cited the decision in Boiler Engineering & Supply Co. v. General Controls, Inc., 277 A.2d 812, 814 (Pa. 1971) that an indemnitee generally may recover only its litigation expenses in defending the underlying claim and not the expenses it incurs to enforce the indemnification provision. But Boiler Engineering did not address the issue of whether a hold harmless provision may constitute an agreement to shift fees.

Apr. 16, 2014 Order at p. 12 (quoting 41 Am. Jur. 2d Indemnity § 30 and citing Delle Donne & Assoc., LLP v. Millar Elevator Serv. Co., 840 A.2d 1244, 1256 (Del. 2004)).

EQT argues that the court's holding is based on tenuous grounds – American Jurisprudence on Indemnity and a non-controlling Supreme Court of Delaware decision.  This court agrees that it would be preferable to have Pennsylvania legal authority directly on the issue of whether "hold harmless" language may constitute an express agreement to shift fees.  The case that EQT cites, Turner Construction Co. v. Lindstrom & Co., No. 87-1429, 1994 WL 77392 (E.D. Pa. Mar. 11, 1994), does not directly address the issue.  EQT is correct that the indemnification provision in Turner Construction contained hold harmless language, but the court refused to award attorneys' fees incurred to enforce the indemnity provision because the plaintiff flatly "provide[d] no legal basis for awarding such attorneys' fees."  1994 WL 77392, at *3.  The court never addressed the sufficiency of the hold harmless language to shift fees.

However, upon reconsideration of 41 Am. Jur. 2d Indemnity § 30 and Delle Donne, the court finds that these authorities establish that hold harmless language is not sufficient to shift the obligation for attorneys' fees incurred in enforcing the indemnification agreement unless the agreement expressly includes attorneys' fees as an item against which the indemnitee is held harmless.  See 41 Am. Jur. 2d Indemnity § 30 ("If the indemnification clause at issue does not specifically say that it includes attorney's fees, they are excluded."); Delle Donne, 840 A.2d at 1249, 1256 (finding that fee shifting was appropriate because the indemnification provision expressly included "all" "reasonable attorneys' fees").  These authorities, therefore, comport with Pennsylvania's rule that in order to shift fees, a contractual provision must be clear or express.  Herd Chiropractic, 64 A.3d at 1066; Putt, 722 A.2d at 226.

This court now concludes that Pennsylvania courts, if faced with the issue, would decide that hold harmless language in an indemnification agreement does not shift the obligation for attorneys' fees incurred to establish the right to indemnity unless the agreement expressly identifies such attorneys' fees as an expense for which the indemnitor agrees to hold the indemnitee harmless.  This approach is consistent with the law in other jurisdictions.  See, e.g., Delle Donne, 840 A.2d at 1256; Nova Research, Inc. v. Penske Truck Leasing Co., 952 A.2d 275, 286 (Md. 2008) (surveying the case law and holding that "a contract provision must call for fee recovery expressly for establishing the right to indemnity in order to overcome the application of the American rule."); Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 316 (2d Cir. 1985) ("[T]he rule that an indemnitee cannot recover the

4

costs of establishing the right to indemnification does not apply if the agreement explicitly says otherwise.") (internal quotation marks omitted).

This approach is also consistent with how Pennsylvania courts have handled the statutory exception to the American Rule.  A statute must be "express" in authorizing fee shifting in order to overcome application of the American Rule.  Herd Chiropractic, 64 A.3d at 1066.  The Supreme Court of Pennsylvania in Herd Chiropractic confined its analysis to the "explicit terms" of the statute at issue, and, in the absence of express statutory authorization to shift fees, the Court adhered to the American Rule.  Id. at 1066-67 (requiring express language even if the result in the case raised policy concerns).  See also Merlino v. Delaware Cnty, 728 A.2d 949, 951 (Pa. 1999) (holding that the use of the word "expense" in a statute was "insufficient to constitute a basis for the award of attorneys' fees").

Here, § 11.6 of the Drilling Contract did not mention attorneys' fees at all, let alone expressly identify attorneys' fees incurred in enforcing the right to indemnity as an item against which Warren would be held harmless.  The court thus finds that Warren cannot recover such fees.

Accordingly, EQT's motion for reconsideration is denied as to the issue of EQT's duty to defend and indemnify Warren against the Hagy litigation, and granted as to the issue of EQT's duty to pay Warren's attorneys' fees incurred in this action.

## II. Reasonableness of Amounts Relating to the Hagy Litigation

Warren bears the burden of proving both the reasonableness of the settlement amount and its litigation expenses.  County of Delaware v. J.P. Mascaro & Sons, Inc., 830 A.2d 587, 593 (Pa. Super. Ct. 2003).

Warren has submitted a brief and evidence in support of its position on the reasonableness of the amount of its settlement with the Hagys and of its attorneys' fees and costs in the Hagy litigation.  The settlement amount was $40,000.  In its submission, Warren demonstrates that at the time of the settlement, it expected to incur a minimum of $43,000 to $68,000 in additional attorneys' fees relating to moving for summary judgment and attending to final pre-trial matters (not including the jury trial itself).  Thus, Warren argues that a $40,000 settlement was a less expensive alternative to further litigation.

As to its attorneys' fees and costs, Warren demonstrates that over the course of a year and a half of litigation, it incurred a total of 465 hours of legal services at rates that varied from $65 per hour to $190 per hour.  The total attorneys' fees were $84,477.50.  Warren incurred $8000.50 in

costs (largely court reporter fees) and $61,911.44 in expert fees. The expert fees were incurred pursuant to a fee-sharing agreement among the defendants, including EQT, in the Hagy litigation.

In response EQT stipulates to the reasonableness of the settlement amount, attorneys' fees, costs, and expert fees. EQT reserves its right to contest on appeal the issue of its liability to defend and indemnify Warren.

In light of EQT's stipulation, the court finds that the amounts of the settlement and of Warren's attorneys' fees and costs are reasonable.

### III. Conclusion

Accordingly, EQT's motion for reconsideration (doc. 71) is denied in part and granted in part. The clerk shall enter final judgment in favor of plaintiff in the amount of $194,389.44.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: August 26, 2014